BRANDON A. THOMAS,

                         Plaintiff,

          v.                                                    Case No. 20-cv-804-pp

KYLE TRITT, JASON ROSENTHAL,
ERIC BIRDYSHAW, CATHEY BANKHURST,
DANIKA BERNAL, ASHLEY HASLEAU,
C.O. ECKL and C.O. CANTU,

                         Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO FILE SUPPLEMENTAL COMPLAINT (DKT. NO. 7), CONSTRUING PLAINTIFF'S MOTION TO FILE AMENDED COMPLAINT AS MOTION TO CORRECT NAME OF DEFENDANT AND GRANTING MOTION (DKT NO. 8) AND SCREENING THE COMPLAINT (DKT. NO. 1)**

          Plaintiff Brandon A. Thomas, a former inmate at Waupun Correctional Institution[1] who is representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983 when they allegedly used excessive force during a cell extraction. Dkt. No. 1. Since filing the complaint, the plaintiff also has filed a motion to file a supplemental complaint, dkt. no. 7, and a motion to file an amended complaint, dkt. no. 8. This order resolves those motions, as well as his motion to proceed without prepaying the filing fee, and screens the complaint.

_____

[1] The Wisconsin Department of Corrections inmate locator web site indicates that the plaintiff was released to extended supervision on September 22, 2020. https://appsdoc.wi.gov/lop/detail.do.

1

## I.  Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 2) (Dkt. No. 2)

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to let an incarcerated plaintiff proceed with his case without prepaying the filing fee if he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On May 28, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $6.51 by June 18, 2020. Dkt. No. 5. The court received that fee on June 22, 2020. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee. Because the plaintiff is no longer incarcerated, the court will require him to pay the remainder of the filing fee over time as he is able. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997).

## II.  Motion to File a Supplemental Complaint and Motion to File an Amended Complaint (Dkt. Nos. 7, 8)

The plaintiff's motion for leave to file a supplemental complaint sought to add to add Brian Foster, the warden at Waupun Correctional Institution, as a defendant. Dkt. No. 7. He attached to the motion a supplemental complaint that proposed to add eleven paragraphs of allegations against Foster but did not restate the allegations in the original complaint. Dkt. No. 7-1. A few weeks

2

later, the plaintiff filed a motion to file an amended complaint asking to change the name of defendant "Eric" Birdyshaw to "John" Birdyshaw. Dkt. No. 8. He did not attach a proposed amended complaint to the motion.

Federal Rule of Civil Procedure 15 describes two ways that a party can change his original pleading. Rules 15(a), (b) and (c) allow a party to "amend" the complaint. Rule 15(d) allows a party to "file a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

An *amended* complaint "supersedes an original complaint and renders the original complaint void." Flannery v. Recording Indus. Ass'n of America, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Put another way, "when a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward." Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999) (citation omitted). For this reason, this court's Civil Local Rule 15 requires that when a party asks to file an amended complaint, the party "must reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference." Civil L.R. 15(a) (E.D. Wis.). It says that a party who wants to amend a pleading "must state specifically what changes are sought by the proposed amendments," and it requires the party to attach the amended pleading to the motion to amend. Civil L.R. 15(b). If the court grants the party permission to amend, the Clerk of Court then may docket the proposed amended pleading as the "operative" pleading in the case. Civil L.R. 15(c).

3

Fed. R. Civ. P. 15(a)(1) allows a party to amend a pleading one time without the court's permission, as long as he does so within twenty-one days of serving the pleading (or, if the pleading has been served, within twenty-one days after the other side has responded). Otherwise, the party must ask and obtain the court's permission to amend.

A *supplemental* pleading under Fed. R. Civ. P. 15(d) has a limited purpose—it gives a party the opportunity to describe events that happened *after* the party filed the original complaint. A party who wants to file a supplemental pleading must file a motion asking the court's permission, and the court does not have to grant that permission. The court "may" grant permission to supplement "on just terms."

The plaintiff's June 2020 motion to file a supplemental complaint (dkt. no. 7) discusses events that happened on May 7, 2020—six days after the events he describes in the complaint. Technically, it complies with Fed. R. Civ. P. 15. But granting the plaintiff's request to supplement the complaint to add his claims against Warden Foster would be futile.

The allegations in the proposed supplemental complaint the plaintiff attached to the motion assert that the plaintiff filed an inmate grievance against defendant Birdyshaw about the events described in the complaint and that Warden Foster accepted the complaint examiner's recommendation and dismissed the grievance. Dkt. No. 7-1. The plaintiff alleges that Warden Foster did not investigate the incident thoroughly and says that Foster was deliberately indifferent by making a "self decision based off [the complaint

4

examiner's] decision" without reviewing body camera footage. Id. at 3-4. Prison officials who deny grievances "but who otherwise did not cause or participate in the underlying conduct" are not liable under §1983. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citing George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)). And because "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause," any alleged mishandling of an inmate's grievance by someone who did not "otherwise cause or participate in the underlying conduct" cannot state a claim for a constitutional violation. Id. The plaintiff has not alleged that Warden Foster was involved in the conduct that gave rise to his inmate grievance, either as a participant or as a supervisor. Because the plaintiff has not alleged that Warden Foster was personally involved in the violation of his constitutional rights, it would be futile for the court to allow him to supplement the complaint to add his allegations against Foster. The court will deny the motion to supplement. Dkt. No. 7.

The plaintiff's motion to amend the complaint (dkt. no. 8) does not comply with this court's Local Rule 15; he did not file a proposed amended complaint to take the place of the original complaint. But the plaintiff does not need to amend his complaint to obtain the relief he seeks, which is to correct the first name of defendant Birdyshaw. The court will construe the motion to amend as a motion to correct the name of a party and will grant it. The court will ask the Clerk of Court to change the caption of the complaint to reflect that the correct first name of defendant Birdyshaw is "John."

5

III.     **Screening the Complaint**

A.     Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege

6

that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. <u>D.S. v. E. Porter Cty. Sch. Corp.</u>, 799 F.3d 793, 798 (7th Cir. 2015) (citing <u>Buchanan–Moore v. Cty. of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

  B. <u>Allegations in the Complaint</u>

  The plaintiff alleges that on May 1, 2020 at about 6:30 a.m., defendant C.O. Cantu told the plaintiff—without explanation—that the plaintiff needed to pack his property because he would be going to general population. Dkt. No. 1 at ¶7. Around 7:45 a.m., defendant Cathey Bankhurst approached the plaintiff's cell and "placed a tether on [his] cell door," asking the plaintiff if he was ready to go and if he had all of his "stuff packed up.". <u>Id.</u> at ¶8. The plaintiff asserts he asked Bankhurst where he was going, and she told him that he was "going to B-range because [the plaintiff] refused GP." <u>Id.</u> The plaintiff says that he "repeatedly" asked "defendant" if he could speak to defendant Kyle Tritt and that it was urgent. <u>Id.</u> at ¶9. Bankhurst responded that she would talk to Tritt but that she didn't know if Tritt would talk to the plaintiff. <u>Id.</u> at ¶10.

  The plaintiff alleges that around 9:000 a.m., the sergeant assigned to the restricted housing unit, Sgt. Beahm, walked past the plaintiff's cell, then

7

entered the cell and turned off the water supply so that the plaintiff had no water in the sink and was not able to flush the toilet. Id. at ¶11. The plaintiff says that Beahm then told him, "You gonna pack your property you['re] moving." Id. The plaintiff asked who told Boehm that the plaintiff "gotta give [his] property up." Id. Boehm responded, "I did, so pack your property and you['re] gonna be moving to B-Range," then walked off. Id.

Around 9:30 a.m., Tritt approached the plaintiff's cell along with Cantu. Id. at ¶12. Tritt told the plaintiff that he was going to "cuff up and come on out." Id. When the plaintiff again asked where they were going, Tritt responded that they the officers were taking the plaintiff to B-Range; the plaintiff asked which cell and Tritt responded "B125." Id. The plaintiff asked why he was being sent to B-Range and Tritt responded that it was because the plaintiff had refused general population; Tritt also told the plaintiff that he would be placed on Temporary Lock-Up status. Id. There appears to have been extensive back-and-forth between the plaintiff and Tritt about why the move was occurring, with the plaintiff expressing the view (as he saids he'd done before in writing) that transitioning through the North Cell Hall before going into general population would help him, Tritt indicating that he'd responded to the plaintiff's written requests and the plaintiff replying that he'd not received the response. Id. At the end of the discussion, the plaintiff told Tritt that he was not leaving the cell and that Tritt should "do what the hell you gotta do." Id. The plaintiff says that he started packing his property and putting it in the back of his cell. Id. at ¶13.

8

A short time later, Tritt returned with defendants Jason Rosenthal, C.O. Eckl, John Birdyshaw, Bankhurst and Cantu. Id. at ¶14. The plaintiff says that except for Tritt, the defendants were "wearing riot helmets, gas masks, and riot suits carrying a chemical agent known as Mark 9 OC Streamer and the Mark 9 OC Phantom Fogger." Id. at ¶¶14, 25. The plaintiff indicates that Tritt appeared to be holding his Taser with his right hand and trying to conceal it from the plaintiff's view. Id. at ¶25. Tritt ordered the plaintiff to come to his cell door and place his hands in the trap. Id. at ¶15. The plaintiff states that he asked Tritt, "Why are you treating me this way?" and told Tritt that he was supposed to send the plaintiff to North Cell Hall because the plaintiff had "adjustment disorders;" the plaintiff says he told Tritt that he would not make it in general population and that his safety would be at risk. Id. at ¶16. The plaintiff says that Tritt told him that if he did not come to the door, Tritt had a Taser and would use it on the plaintiff. Id. at ¶¶16, 25. The plaintiff says that he was not showing any signs of threat to himself or the officers, that he was defenseless and that he was not showing any signs of erratic behavior. Id. at ¶25. The plaintiff responded that Tritt was not going to taser the plaintiff because the plaintiff had heart problems that ran in his family. Id. at ¶16. The plaintiff also notes that he had a washcloth over his face because of COVID-19; he says that this was a health precaution because a staff member and correctional officer had brought the virus into the institution and he says he did it because Tritt was not wearing a face mask while at the plaintiff's cell door. Id.

The plaintiff alleges that Tritt said nothing about having chemical agents

9

with him that could be used. Id. at ¶25. He says that Tritt told Birdyshaw, "Spray him," even though "at that time, [the plaintiff] was facing the door not causing any threat to harm [himself] or staff, [the plaintiff] was not hostile nor was [he] showing any sighn [*sic*] of defensive [*sic*]." Id. at ¶¶17, 25. The plaintiff alleges that at about 9:50 a.m. Birdyshaw sprayed him directly in his "eye pupil" with the Mark 9 OC Streamer without any warning or indication of what was about to happen. Id.; Id. at ¶¶20, 25. The plaintiff says that he was "instantly blinded;" he says that Tritt said "walk to the door," and the plaintiff responded, "I can't freakin' see." Id. at ¶20. The plaintiff alleges that Tritt said to Birdyshaw, "Spray him again." Id. The plaintiff says that he was having trouble breathing and seeing, but that he managed to "blindly" touch the wall to make his way to the front of the cell, putting his hands in the air and asking to be removed from the cell; he says he stuck his hands out of the trap to be handcuffed. Id.

The plaintiff also alleges Tritt gave Birdyshaw a verbal order to spray the defendant with the Mark 9 OC Fogger. Id. at ¶¶20, 25. He says that the Fogger "has a[n] air gas affect to disrupt the oxygen in the air and breathing discomfort and affects the [respiratory] system," and notes that he had had breathing issues in the past. Id. The plaintiff alleges that the Fogger can cause extreme burning upon exposure to skin and that the effect can last up to two days if it is not properly washed off with a decontaminant. Id. The plaintiff reiterates that he did not pose any threat to himself or to anyone else; he says that the defendants had body watch cameras operating during the incident and

10

that defendant Bernal was videoing the incident. Id.

Birdyshaw handcuffed the plaintiff's wrist and the cell door was opened; the plaintiff was ordered to kneel down and restraints were put on his ankles. Id. at ¶18. The plaintiff states that he was "gasping for air" and that he couldn't see because "the chemical agent was burning [his] eyes and was all over the skin of [his] body." Id. The plaintiff was lifted off the ground. Id. He says that Tritt, BIrdyshaw, Rosenthal, Eckl, Cantu and Bankhurst extracted him from the cell. Id. at ¶21. He began to ask to be placed in the shower because the chemical agent was burning his eyes and dripping off his skin and face. Id. at ¶¶18, 21. He says that Tritt, Birdyshaw, Rosenthal, Eckl, Cantu, Bankhurst and Bernal—with Bernal holding the video camera in her right hand—escorted him to the Upper C-Range shower stall. Id. at ¶22. The plaintiff alleges that he was "being still held and impaired movement without officers guiding [him];" he indicates that he was told to turn left into the shower stall because he couldn't see where he was walking. Id. at ¶¶18, 22. The plaintiff asserts that Birdyshaw and Rosenthal put his face in the water for only three seconds before pulling him out; he says the chemical agent "was not washed off properly." Id.

The plaintiff was escorted to strip cell #1; the burning in his eyes and skin continued. Id. at ¶¶19, 22. He indicates that he was not put inside the cell; he says that Birdyshaw told him to face the door and don't turn or move. Id. at ¶19. He indicates that he continued to ask Birdyshaw and Tritt for a towel to wipe his eyes and for something to stop the burning. Id. The plaintiff alleges that the "defendants" told him that he couldn't have a towel and said

11

that the nurse was going to talk to him and ask him a few questions. Id. He says that Birdyshaw started to cut his segregation clothing off; at this point, all seven defendants were present. Id. The plaintiff indicates that two of the defendants—Bankurst and Bermnal—were women and were "very close by where" Birdyshaw conducted the strip search. Id. at ¶¶19, 26. He indicates that after Birdyshaw cut his clothes off, the plaintiff still wasn't placed inside the strip cage, and he says he wasn't given the chance to take his clothes off himself. Id. at ¶19. He says he wasn't given the chance to "perform a self body search," a procedure which he describes as conducting a search of his own person by following the instructions of prison staff. Id. Instead, he says that after Birdyshaw removed his clothes, the plaintiff was instructed to get into a kneeling position and then Birdyshaw strip-searched him without his permission. Id. He says that Birdyshaw ran his fingers through the plaintiff's hair, checked his ears and mouth, grabbed his scrotum, grabbed and spread his buttocks, all in an "abusive manner" that made the plaintiff uncomfortable physically, mentally and emotionally. Id. at ¶¶19, 26. The plaintiff contends that Birdyshaw then placed a "kilt" around his waist. Id. at ¶19.

The plaintiff alleges that nurse Ashley Hasleau came to his right side and asked the plaintiff if he needed to be examined for any injuries. Id. at ¶23. The plaintiff says that he asked for a towel to wipe the chemical agent out of his eyes. Id. He alleges that Hasleau looked at Tritt, who shook his head and said no, telling the plaintiff to just let Hasleau know if he had any medical injuries. Id. at ¶28. Hasleau then told the plaintiff that she couldn't give him a towel,

that he would "just have to get through with it" and that the chemical lasted only a couple of hours. Id. at ¶¶23, 28. The plaintiff says he explained that he had breathing problems that ran in his family. Id. He says Hasleau asked him again if he had any medical needs, then just said to Tritt, "He's cleared." Id. The plaintiff alleges that Hasleau did not take his blood pressure or his vitals. Id. at ¶30.

At that point the plaintiff was escorted to Lower A-Range cell A120 "without no decontamination or medical treatment or shower." Id. at ¶¶19, 23-24. The plaintiff says that he was escorted to cell A120 in full restraints and that his eyesight was still impaired due to the chemical agent. Id. at ¶19. He was put in cell A120 "under control status." Id. the plaintiff says that Tritt, Birdyshaw and Rosenthal placed him in cell A120 "without basic human needs clothing, medical care, soap, sheets, blankets, mattress, personal hygiene and sleep." Id. at ¶¶27, 29. The plaintiff reiterates that the defendants had body watch cameras operating and that Bernal videoed all of this. Id. at ¶23. He says he was given no soap for eight hours and no shower until two days later (on May 3, 2020). Id. at ¶¶24, 27.

The plaintiff seeks compensatory damages as follows: $10,000 against Tritt and Birdyshaw for their use of excessive force; $5,000 against Tritt, Birdyshaw, Rosenthal, Bankhurst, Bernal, Hasleau, C.O. Eckl, and C.O. Cantu for not allowing him to shower or otherwise wipe off the chemical agent; $5,000 against Tritt and Hasleau for failing to provide adequate care. Id. at 14. He also seeks punitive damages of $1,000 against each of the defendants. Id. at 15.

13

C.    Analysis

1.    *Eighth Amendment Excessive Force*

The plaintiff first asserts that defendants Tritt and Birdyshaw violated his Eighth Amendment rights when they used a chemical agent on him during his transition from segregation. "Correctional officers violate the Eighth Amendment when they use force 'maliciously and sadistically for the very purpose of causing harm,' but not when they apply it in good faith to maintain or restore discipline." Jackson v. Angus, 800 F. Appx. 378, 382 (7th Cir. 2020) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)). To determine whether the use of force was malicious and sadistic, the court considers several factors, "including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused an inmate." Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004).

The plaintiff alleges that he was trying to explain to Tritt why he could not move to B-Range but instead needed to go to North Hall Cell Transition. Dkt. No. 1 at ¶12. The plaintiff admits that at the end of that discussion he refused to leave his cell and told Tritt, "You do what you gotta do." Id. But the plaintiff maintains that he was not posing any threat to himself or anyone else and was not acting erratically. Id. at ¶¶14, 17.  While correctional officers must maintain "decorum and discipline among inmates to minimize the risk to themselves and other prisoners," Lewis v. Downey, 581 F.3d 467, 476 (7th Cir. 2009), where a prisoner is passive and not posing a threat, using a chemical

14

agent against that inmate may amount to a constitutional violation. See Jackson, 808 F. Appx. at 382; Rice *ex rel.* Rice v. Corr. Medical Servs., 675 F.3d 650, 668 (7th Cir. 2012). The plaintiff has alleged sufficient facts to allow him to proceed on a claim that Tritt and Birdyshaw acted maliciously and sadistically when they used the chemical agents on the plaintiff, and he may proceed on an Eighth Amendment excessive force claim against them.

2. *Eighth Amendment Deliberate Indifference to Medical Needs*

The plaintiff alleges that defendant Hasleau was deliberately indifferent to his medical needs when she refused to treat his exposure to the chemical agent or address his breathing problem. The plaintiff also alleges that the other named defendants—Tritt, Birdyshaw, Rosenthal, Bankurst, Bernal, Eckl and Cantu— were deliberately indifferent to his medical needs when they refused to let him shower or to address his breathing issues.

To state an Eighth Amendment deliberate indifference to medical needs claim, "a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008). A plaintiff does not need to allege that the condition be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). Additionally, to allege deliberate indifference, a plaintiff must allege "that an official *actually* knew of and disregarded a substantial risk of harm." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016).

15

The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." Stallings v. Liping Zhang, 607 F. Appx. 591, 593 (7th Cir. 2015) (quoting Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014)). These choices include where a prison official fails to act or do anything to address the serious medical need. See Gayton, 593 F.3d at 623-624 (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). They also include where an official delays necessary treatment, aggravating a condition or needlessly prolonging a plaintiff's pain. Gomez v. Randle, 680 F.3d 859, 865-66 (7th Cir. 2012).

The plaintiff has alleged sufficient facts to state a claim that all the defendants were deliberately indifferent to his objectively serious medical needs. For the purposes of screening, the court assumes that difficulty breathing and lasting irritation and pain from the use of a chemical agent are objectively serious medical issues. Regarding Hasleau, the plaintiff alleges that she refused to give him a towel to wipe away the chemical agent, telling him he would have to wait a couple of hours until the effects wore off. Dkt. No. 1 at ¶23. He further alleges that when he told her about his difficulty breathing, she did nothing. Id. at ¶30. He alleges that Birdyshaw and Rosenthal put his head under the shower for only three seconds and that all the defendants ignored his complaints about being in pain and not being able to see or breathe. Id. at ¶18. The plaintiff may proceed on an Eighth Amendment deliberate indifference

16

claim against all the defendants.

       3.    *Constitutional Violations for Strip-Search*

The plaintiff alleges that defendants Tritt, Birdyshaw, Bankhurst and Bernal violated his constitutional rights when they strip-searched him. The Seventh Circuit recently recognized that when it comes to strip-searches and body cavity searches, prisoners have rights under both the Fourth and Eighth Amendments. Henry v. Hulett, 969 F.3d 769 (7th Cir. 2020). In Henry, the Seventh Circuit held that "[t]he Eighth Amendment safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment [and] . . . .The Fourth Amendment thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." Id. at 781 (citations omitted).

"Prison authorities violate the Eighth Amendment when they treat inmates in a way that is 'motivated by a desire to harass or humiliate' or 'intended to humiliate and cause psychological pain.'" Chatman v. Ill. Dept. of Corr., 685 F. Appx. 487, 489 (7th Cir. 2017) (quoting King v. McCarty, 781 F.3d 889, 897 (7th Cir. 2015)). Strip-searches conducted in front of prison officials who are members of the opposite sex, if done in a humiliating manner, may rise to the level of an Eighth Amendment violation. Id. (citing Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003)). Additionally, "[a]n unwanted touching of a person's private parts, intended to humiliate the victim or gratify

17

the plaintiff's sexual desires, can violate a prisoner's constitutional rights."
<u>Washington v. Hively</u>, 695, F.3d 641, 643 (7th Cir. 2012).

Under the Fourth Amendment, a plaintiff must demonstrate "that the searches were unreasonable, considering 'the scope of the particular intrusion[s], the manner in which [they were] conducted, the justification for initiating [them], and the place in which [they were] conducted." <u>Henry</u>, 969 F.3d at 784 (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979)). "To determine whether a search is unreasonable, courts weigh 'the degree in which it intrudes upon an individual's privacy' against 'the degree to which it is needed for the promotion of legitimate governmental interests.'" <u>Kingsley v. Monroe Cty. Justice Dep't.</u>, No. 20-cv-255-jdp, 2020 WL 3799166 at *2 (W.D. Wis. July 7, 2020) (quoting <u>Wyoming v. Houghton</u>, 526 U.S. 295, 300 (1999)).

The plaintiff alleges that the defendants conducted his strip-search in front of female officers and that one of the female officers filmed the search. Dkt. No. 1 at ¶31. He alleges that Birdyshaw's search of his person was unnecessary, malicious and performed without his consent. <u>Id.</u> at ¶32. He also states that the search humiliated him. <u>Id.</u> at ¶31. These allegations call into question both the prison officials' motivation for the search and the reasonableness of the search. The plaintiff may proceed against defendants Birdyshaw, Bankhurst, and Bernal on both a Fourth Amendment unreasonable search claim and an Eighth Amendment cruel and unusual punishment claim for the strip-search. Regarding Tritt, while the plaintiff did not allege that he participated in the search, he implies that Tritt was

18

supervising the search and condoned or turned a blind eye to the conduct of the other defendants, which is enough to state a claim under §1983. See Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003).

4. *Eighth Amendment Violations Conditions of Confinement*

The plaintiff also asserts that defendants Birdyshaw and Rosenthal violated his Eighth Amendment rights when they placed him in cell A120 after the strip-search and did not provide him clothes, soap, a blanket or a mattress for eight hours and did not allow him to shower for two days. "Jail officials violate the Eighth Amendment if they are deliberately indifferent to adverse conditions that deny 'the minimal civilized measure of life's necessities', including adequate sanitation and personal hygiene items." Budd v. Motley, 711 F.3d 840, 842 (7th Cir. 2013) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). While each deprivation on its own may not rise to the level of a constitutional violation, they "may violate the Constitution in combination when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

The plaintiff alleges he had chemical agent in his eyes and on his body when Birdyshaw and Rosenthal placed him into cell A120, but they did not give him soap or a way to clean himself. Dkt. No. 1 at ¶27. His allegations also imply that he was naked for eight hours because they suggest that the defendants did not give him clothes after the strip-search nor did they provide him a blanket. These allegations are sufficient to allow the plaintiff to proceed

19

on an Eighth Amendment conditions of confinement claim against Birdyshaw and Rosenthal.

## IV.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion to file a supplemental complaint. Dkt. No. 7.

The court **CONSTRUES** the plaintiff's motion to file an amended complaint as a motion to correct the name of a party and **GRANTS** that motion. Dkt. No. 8.

The court **DIRECTS** the Clerk of Court to correct the caption of the case to show the first name of defendant Birdyshaw as "John," not Eric.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Kyle Tritt, Jason Rosenthal, John Birdyshaw, Cathey Bankurst, Danika Bernal, Ashely Hasleau, Correctional Officer Eckl and Correctional Officer Cantu. Under the informal service agreement, the court **ORDERS** the defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the plaintiff must pay the **$343.49** balance of the filing fee to the Clerk of Court, 517 East Wisconsin Avenue, Room 326, Milwaukee, Wisconsin 53202 as he is able.

The court will issue a separate order **REFERRING** this case to Magistrate

Judge Nancy Joseph for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 18th day of November, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

21